AO 91 (Rev. 11/11) Criminal Complaint

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

DEC 0 4 2015

DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

United States of America )
v. )
) Case No. 15-m-5042
Danny Orellana-Pineda )
)
)
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  December 3, 2015  in the county of  Washington  in the
Western  District of  Arkansas  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. Section 841(a)(1) and 846 | Conspiracy to Possess Methamphetamine with Intent to Distribute |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

DEA TFO John Brashear
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/4/15

_____
*Judge's signature*

City and state:  Fayetteville, AR

US Magistrate Judge Erin L. Sester
*Printed name and title*

**AFFIDAVIT**

I, John Brashear, Task Force Officer with the Drug Enforcement Administration (DEA) being first duly sworn, do hereby depose and state as follows:

**Introduction**

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been a Task Force Officer with the DEA since March of 2013. I am currently assigned to the Fayetteville Resident Office. In connection with my official DEA duties, I investigate criminal violations of the Controlled Substances Act. I have received specialized training in the enforcement of federal narcotics laws. My training and experience have involved, among other things, (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealment of proceeds of drug trafficking; (b) surveillance; and (c) analysis of documentary and physical evidence. I have participated in investigations involving the interception of wire communications. Based on my training and experience, I have become familiar with the manner in which narcotics traffickers conduct their drug related businesses, including the methods employed by narcotics dealers to import and distribute narcotics, and their use of coded language to refer to narcotics, drug proceeds, and other aspects of narcotics trafficking. I have personally been involved in multiple investigations involving the unlawful possession, manufacture, and distribution of controlled substances, including cocaine, methamphetamine, marijuana, and money laundering.

2.      Since March of 2008, I have been employed as a law enforcement officer. I started out as a police officer with the Rogers Police Department. In July of 2011, I became a Narcotics Detective with the Rogers Police Department. My duties as a Narcotics Detective involved narcotics investigation: (a) surveillance; (b) debriefing of defendants and witnesses; (c) analysis of documentary evidence; (d) conducting undercover operations; (e) preparing and executing state search warrants and arrest warrants; (f) participating in the execution of federal search and arrest warrants; (g) collecting information to further investigations; (h) managing confidential sources; and (i) arresting individuals involved in drug trafficking violations.

3.      This affidavit is being submitted in support of a criminal complaint for Antonio ORELLANA-PINEDA, Danny ORELLANA-PINEDA, and Mario De Jesus MONTOYA-PERLERA. As such, it does not include all of the information known to me as part of this investigation, but only information sufficient to establish probable cause for the requested arrest warrant.

## Probable Cause

4.      In January 2015, the DEA, Fayetteville, Arkansas, Resident Office (FRO) in conjunction with the United States Postal Inspection Service Arkansas Domicile, the Rogers Police Department, the Springdale Police Department, and the Arkansas State Police began investigating the drug trafficking activities of a large scale methamphetamine Drug Trafficking Organization (DTO). This DTO is currently facilitating the unlawful importation, transportation, and distribution of quantities of methamphetamine and the collection, remittance, and laundering of corresponding drug proceeds. This DTO has been known to ship methamphetamine through the United States Postal Service. Once the shipments arrive in Northwest Arkansas the targets of investigation coordinate the distribution of drugs throughout the area.

5. On the morning of December 2, 2015, United States Postal Inspector David Barrett contacted TFO John Brashear about a package that had arrived at the Rogers Post Office, which was addressed to 802 Rozell St, Apt. 1, Rogers AR. TFO Brashear had previously asked Inspector Barrett to place a postal watch on that address because of information reported by a DEA Confidential Source that this residence was a methamphetamine distribution location. Later on that same morning, TFO Brashear was contacted by Inspector Barrett who advised him that two males were sitting outside of 802 Rozell St, Apt. 1, Rogers, AR. Inspector Barrett advised TFO Brashear that the males had approached the United States Postal Carrier inquiring about a package that was supposed to arrive. Inspector Barrett stated that the Postal Carrier reported that the males stated that the package was an Express package and would arrive by 3:00 pm.

6. Later, on December 2, 2015, Rogers Police Department TFO Daniel Wilcox and K-9 Jagd were utilized in connection of the investigation of the suspect parcel received by the Rogers, Arkansas Post Office on December 2, 2015, addressed to 802 Rozell Street Apt. 1, Rogers, AR 72756. Jagd is certified by the National Narcotics Detector Dog Association (NNDDA) for Methamphetamines, Marijuana, Cocaine, and Heroine. The suspected parcel was placed with four controlled packages. TFO Wilcox did not know which parcel was the suspect parcel. Jagd alerted on the suspected package, indicating the parcel contained one of the drugs K-9 Jagd is certified in detecting.

7. At approximately 1:15 pm, TFO Kevin Sears, Intelligence Analyst Benton Johnston, and RAC Thomas Flowers established surveillance at 802 Rozell Street, Apartment 1, Rogers, AR. RAC Flowers observed two males, later identified as Antonio ORELLANA-PINEDA and Mario De Jesus MONTOYA-PERLERA standing outside of the residence. Thirty minutes later at approximately 1:45 pm, RAC Flowers observed Antonio ORELLANA-PINEDA, MONTOYA-

PERLERA, and Danny ORELLANA-PINEDA walking away from 802 Rozell Street and southbound on South 8th Street. TFO Sears and IA Johnston then observed Antonio ORELLANA-PINEDA, Danny ORELLANA-PINEDA, and MONTOYA-PERLERA walking inside the 24 Hour Coin Laundry located at 400 North 8th Street Suite B, Rogers, AR. Then, at approximately 2:00 pm, RAC Flowers observed Danny ORELLANA-PINEDA walking northbound on North 8th Street and back to 802 Rozell Street Apt. 1. RAC Flowers observed Danny ORELLANA-PINEDA standing outside the residence.

8.      Also in the afternoon of December 2, 2015, United States Postal Inspector David Barrett applied for a search warrant for the United States Postal Service package that was intercepted that was addressed to Melisa Melendez at 802 Rozell St, Apt. 1, Rogers, AR. United States Magistrate Judge Erin L. Setser signed the search warrant for the package.

9.      After the warrant was obtained, TFO Robert Thorson and TFO Jacob Lawson opened the package. Inside the package they located a black speaker inside a blue plastic sack. TFO Thorson and TFO Lawson removed the screws out of the black speaker and opened up the speaker. Inside the speaker they located approximately one half of a pound of methamphetamine. The methamphetamine was wrapped in saran wrap, black carbon paper, and tin foil. The methamphetamine was field tested and tested positive for methamphetamine. TFO Thorson and TFO Lawson removed a representative sample of methamphetamine, weighing approximately 3 grams, from the approximate half pound of methamphetamine. TFO Thorson and TFO Lawson placed the representative sample of methamphetamine back inside the speaker and resealed the package.

10.     At approximately 2:25 pm, Inspector Barrett arrived at the Rogers Police Department and took custody of the package with the representative sample. Inspector Barrett, the DEA

Fayetteville Resident Office, and the Rogers Police Department then proceeded to conduct a controlled delivery of the package as follows: At approximately 2:35 pm, Inspector Barrett accompanied by SA Bryan Rorex arrived at 802 Rozell St, Apt. 1, Rogers AR. Inspector Barrett, working in an undercover capacity as a mail carrier, exited the postal vehicle with the package. Inspector Barrett made contact with Danny ORELLANA-PINEDA who was standing outside of the residence. Inspector Barrett asked Danny ORELLANA-PINEDA if this was 802 Rozell Street. Danny ORELLANA-PINEDA stated that it was. Inspector Barrett asked if it was apartment 1 and Danny ORELLANA-PINEDA stated that it was. Inspector Barrett asked Danny ORELLANA-PINEDA if he was Melendez. Danny ORELLANA-PINEDA stated that he was and accepted delivery of the package. SA Rorex observed Danny ORELLANA-PINEDA place the package next to the house and then begin walking on Rozell Street. At that time members of the Rogers Police Department SWAT Team approached Danny ORELLANA-PINEDA and took him into custody without incident. Danny ORELLANA-PINEDA was wearing a backpack. Inside the backpack was a black digital scale and a small baggie of methamphetamine that was later field tested and tested positive for methamphetamine.

11. After Danny ORELLANA-PINEDA was taken into custody, SA Robert Robinson, Springdale Police Department Officer Guillermo Sanchez, TFO Robert Thorson, TFO Jacob Lawson and RAC Thomas Flowers made contact with Antonio ORELLANA-PINEDA and MONTOYA-PERLERA inside the laundry mat. Antonio ORELLANA-PINEDA and MONTOYA-PERLERA were taken into custody and transported to the Rogers Police Department. MONTOYA-PERLERA was advised of his rights per Miranda. MONTOYA-PERLERA signed an advice of rights form. During the interview he advised he was from El Salvador and came to the United States illegally two years ago. He stated that he been living in

New York and came to Arkansas approximately two weeks ago. He advised that he traveled here with two other subjects being Danny "King Boxer" and Antonio "Boxer." MONTOYA-PERLERA stated he was going to stay in Arkansas for about three months. He advised that he had not spoken to "Trusty" in a week. He stated that approximately two months ago he was in New York working construction when "Trusty" contacted him and offered him two thousand dollars to come work for him. He stated that when he and the other two males arrived here they went to Fort Smith, Arkansas to distribute one ounce of methamphetamine to a black male but they did not meet. However, two days later the black male came to Rogers, Arkansas and met with "Danny" and bought the ounce. He informed investigators that he did not make any money off of that sale. MONTOYA-PERLERA advised that he knew that "Trusty" was sending something but he did not want to know. He advised that he was lacking money and that is why he did this. He informed investigators that the money made from "Trusty's" dope was to pay a debt that "Trusty" owed. He advised he had a bad feeling and did not think it was going turn out well. He acknowledged that they purchased the digital scale that was seized and that it was purchased by them about a week ago. He advised that he had been in possession of the methamphetamine seized from the back pack on this date. However, he advised the methamphetamine was not good and they were going throw it away. He informed investigators that "Trusty" had recently started treating him bad and he was turning away from them. MONTOYA-PERLERA informed investigators that "Trusty" has never left him in charge. That he believes "Trusty" was trying to push him to the side. He stated that "Danny" was in charge of the package today because they were pushing him to the side. He advised that he was not going to help and was not going to make any money on this package. He informed investigators that he overheard that "Trusty" was mailing a ½ pound of methamphetamine. He advised that he had been residing at the residence

on Rozell Street for the several past days. He acknowledged that the packaging materials seized on Rozell belonged to them. He informed investigators that when they left New York they drove to Houston, Texas. While they were in Houston, Texas they met with two or three guys and acquired a package of methamphetamine. He advised "Trusty" arranged the meeting between them and the Houston subjects. He informed investigators that they were traveling in a rental car and that they transported approximately two ounces of methamphetamine to Arkansas. MONTOYA-PERLERA also told agents that upon their arrival to Northwest Arkansas, they distributed one ounce of methamphetamine for $1,200.00. He informed investigators he was paid three hundred dollars for the first ounce but did not make any money off the second ounce. He advised that they sent the money to El Salvador to "Trusty" on separate occasions. He informed investigators that "Danny" and "Antonio" wired the money. He admitted that he did wait outside for the package but they got tired of waiting and went to the laundry mat. He advised that he told his friends to leave but "Trusty" kept calling "Danny." He informed investigators that they wanted them to go back to Houston but he refused. He informed investigators that he was not to make any money off of the package delivered today from "Trusty." That he no longer wanted to deal with "Trusty." He advised that they never sold methamphetamine inside the Rozell Street house but did distribute methamphetamine outside the residence. He informed investigators that once they got here with the methamphetamine from Houston they packaged it for distribution. He explained to investigators that they measured the bags and then they just sold quantities to make money. He advised they drove around looking for new clients but they were unsuccessful. He stated that they did find one client that bought fifty dollar bags on two occasions at the Motel 8 in Rogers, Arkansas. He advised he knew the customer from the past.

12. During the booking process at the Washington County Jail, MONTOYA-PERLERA was found to be in possession of 9 small baggies each containing methamphetamine. The small baggies of methamphetamine were packaged for distribution. The methamphetamine was field tested and tested positive.

13. Antonio ORELLANA-PINEDA was advised of his rights by SA Robert Robinson, Detective Chris Needham, and Officer Mario Garcia with the Rogers Police Department was translating. Antonio ORELLANA-PINEDA waived his rights and stated to agents that he is in this country illegally from El Salvador. He also stated that he was in Arkansas to distribute methamphetamine, and that the package that was delivered today was supposed to be "three shirts" which he stated means three ounces. Antonio ORELLANA-PINEDA then stated that all three of them were to be paid $1000 for their work distributing methamphetamine.

_____
John Brashear, Task Force Officer
Drug Enforcement Administration

AFFIDAVIT subscribed and sworn to before me this __4th__ day of December, 2015.

_____
Erin L. Setser
United States Magistrate Judge